IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLANIA

JOSE MONTANEZ,
    Plaintiff

    V.

PAULA PRICE et;al,
    Defendants

Civil Action No. 3:22-cv-1267

Judge Robert D. Marianni

Jury Trial Demanded

FILED
SCRANTON

APR 2 8 2023

PER _____
DEPUTY CLERK

## Plaintiff's Motion In Opposition to Dismiss

Now comes, Pro Se plaintiff Jose Montanez, in the above captioned case, in opposition of Defendants Wellpath, LLC, Doctor Rajinder Mahli, Doctor David Edwards, Doctor Preston, and Physician Assistant Gabrielle Nalley, by and through their attorneys, motion to dismiss.

Plaintiff will first address defendants claim regarding Wellpath as a defendant in plaintiffs amended petition.

As plaintiff laid out in his complaint (amended), Wellpath, LLC, is being sued as a puble entity contracting (who contracted the medical staff in this case). Therefore, through their service of providing contracted medical personel, and due to the violations attributed to these contracted medical personel, they are held liable under The Americans with Disabilities Act and through Federal Law.

28 C.F.R. § 35.130 (b)(1) states: A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangemets, on the basis of disability —

(v) Aid or perpetuate discrimination against a qualified Individual with a disability by providing significant assistance to an agency, orginization, or person that discriminates on the basis of disablility in providing any aid, benefit, or service to beneficiaries of the public entity's program;

Wilkins-Jones v. County of Alameda, {2012 U.S. Dist. LEXIS 10} Quoting: Armstrong v. Schwarzenegger, 622 F.3d 1058, 1065-66 (9th cir 2010 "That a public entity has contracted for the provision or occurrence of such services, programs, and activities seems sufficien to make them 'the services, programs, or activities' of that entity." Id. at 1066

Wikins-Jones, {2012 U.S. Dist LEXIS 11} "A public entity, in providing any aid, benefit, or Service, may not directly or through contractual, licensing, or other arrangements, discriminate against individuals with disabilities".) 28 C.F.R. § 35.130(b)(1)   (ADA) 42 U.S.C. § 12132

Miller v. City of Johnson City, 1996 U.S. Dist. LEXIS 7360 "a public entity shall operate { LEXIS 3} each service, program, or activity, when view in its entirety, is readily accessible to and

(2)

Usable by individuals with disabilities" 28 C.F.R. § 35. 150 (a)

Therefore, under Title II of the Americans with Disabilities Act (ADA), Wellpath, LLC, is a public entity and can not contract away their liability. (~~strikethrough~~)

## Doctor Rajinder Mahli

Defendant Mahli was made aware of plaintiffs condition by Defend Wagman, a nurse, who called defendant Mahli because he was the on call Doctor that day (August 28, 2021 saturday). After being made aware of plaintiff's condition, Dr. Mahli instructed nurse Wagman to place plaintiff in a bottom tier cell until he could see him the next day. Instead of coming in immediately to assess plaintiff's condition for himself Defendant Mahli chooses to be deliberately indifferent to plaintiff's suffering, which amounted to cruel and unusual punishment under the law.

Whitley v. Albers, 475 U.S. 312, 89 L. Ed 2d 251, 106 S. Ct. 1078 (1986) Held: (a) It is obduracy and wantoness, not inadvertence or error in good faith, that characterize's the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, Supplying medical needs, or restoring control over a tumultuous cellblock.

Wilson v. Seiter, 501 US 309   ( Quoting Whitley )"An express intent to inflict unnecessary pain is not required, Estelle v. Gamble, 429 US 97, 104 [50 L. Ed. 2d 251, 97 S.Ct. 285] (1976) ('deliberate indifference' to a prisoners serious medical needs is cruel and unusual punishment),

Defendant Mahli's deliberate indifference to plaintiff's serious medical needs not only amounted to cruel and unusual punishment, it led to cruel and unusual conditions of confinement.

Plaintiff was left paralyzed in a cell by himself where he was forced to have to crawl on the floor on his hands and numb knee to and from the door to recieve his meals and medication, as well as his need for the use of the restroom and to use the sink. However, plaintiff's need for the restroom would be minimal, due to him uncontrollebly urinating on himself, and his need for the sink would increase as plaintiff would have to continuous wash his underware because of his urinating on himself. This task caused Plaintiff excruciating pain in his back and neck as he was forced to climb a toilet, that already had urine stains on it from the cells prior occupants, to reach the sink using only his two arms to pull up his whole body weight and then try to hold on to the sink with one arm while trying to wash his underware and body. Plaintiff fell numerous times injuring himself over and over again in several diffrent areas of his body, most of which he thankfully could not feel due to him being paralyzed.

Defendant Mahli came to see plaintiff the next day, (Sunday August 29, 2021) however he did not come into the cell and the cell was still

closed and locked. The cell was dark, due to the light not being on, but Defendant Mahli did not seem to mind when he told plaintiff to try to walk. When plaintiff showed and explained that he could not walk he made Doctor Mahli aware that he was urinating on himself as well as the extreme pain he was experiencing; the Doctor merely nodded his head and walked off. Plaintiff's extra strength tylenol was never changed to a sufficient pain medication to remedy the pain, nor was anything ever done about plaintiff urinating on himself (like giving plaintiff an adult diaper).

Plaintiff was forced to live under these same conditions for over three (3) days, from Saturday August 28, 2021 until Tuesday August 31, 2021 when he was taken to the prison's medical department and an ambulance came and picked him up from there.

18 U.S.C. § 2246 defines the term "serious bodily injury" under § 1983 as:

### 18 U.S.C. § 2246 (~~3~~) (D) (4)

the term "serious bodily injury" means bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty;

Therefore, to say that what this plaintiff was forced to endure at the hands of Defendant Mahli was not cruel and unusual, despite the obviousness of the serious bodily injury, would be to ignore the standard

(5)

of decency expected from us as a civilized and humane society.

Estelle v. Gamble, 429 U.S. 97, 103 (1976); Brown v. Plata, 131 S.Ct. 1910, 1928 (2011) ("Prisoners retain the essence of human dignity inherent in all persons. Respect for that dignity animates the Eighth Amendment prohibition against cruel and unusual punishment . . . A prison that deprives prisoners basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society.")

Estelle, 429 U.S. 103-104  The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common law view that "It is but just that the public be required to care for the prisoners, who cannot by reason of the deprivation of his liberty, care for himself."

Farmer v. Brennan, 511 US 842  "If the risk is obvious, so that a reasonable man would realize it, we might well infer that the defendant did in fact realize it;"

Gutierrez v. Peters, 111 F.3d 1373  A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Laaman v. Helgemoe, 437 F.Supp. 269, 311 (D.N.H. 1997)

Gutierrez, [1997 U.S. App. LEXIS 27} "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain;" McGuckin v. Smith, 974 F-3d 1050, 1060 (9th Cir. 1992) (quoting Estelle), and considers the following to be indications that a prisoner has a serious medical need: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Id. at 1059-1060

Plaintiff asks the court this; Would being paralyzed (not being able to walk all of a sudden) be considered a 'serious medical need' under this example? And is leaving plaintiff in this condition, confined to a cell with no one to help him over a three day period, satisfactory in terms as to Defendant Mahli's state of mind?

Helling v. McKinney, 509 US 32   Wilson v. Seiter, 501 US 294, 115 L Ed 2d 271, 111 S. Ct. 2321 (1991), later held that a claim that the conditions of a prisoner's confinement violate the Eighth Amendment requires an inquiry into the prison officials state of mind. "Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the "deliberate indifference" standard articulated in Estelle" Id, at 303, 115 L. Ed. 2d. 271, 111 S. Ct. 2321.

(7)

Therefore, plaintiff believes that the requirement for a culpable state of mind has been shown with regards to Defendant Mahli.

## Doctor Preston/SCI-Rockview

Plaintiff recieved spinal surgery for Spinal Stynosis/Spinal cord edema on September 10, 2021 and on September 15, 2021 he was transferred to Encompass Health for physical therapy to rehabilitate his body so that he may have a chance to walk again. However, plaintiff was only allowed fifteen (15) days in physical therapy before he was picked up by Correction staff and transffered to SCI-Rockviews infirmary unit. (SCI-Huntingdon, my home jail, did not have medical housing so I was placed at SCI-Rockview instead. When plaintiff was take out of the physical therapy clinic it was in the same way he was taken in, in a wheelchair because he could not walk. In so when he was placed in a cell by himself and he pushed his button for the nurse, as he had done for safety purposes when he needed something (like help going to the restroom since he could not walk on his own) while he was in the therapy clinic, he was told not to ever push that button unless it was an emergency, and as far as getting help to and from the restroom, plaintiff was told that he would have to do the best he could on his own. This was told to plaintiff by one of the nursing staff. When plaintiff asked the nurse is she was aware that he was paralyzed and could not walk she said yes, threw her arms up as to say, "What do you want me to do?" shrugged and walked out.

The next day, October 2, 2021, plaintiff was seen by Doctor/Defendant preston. Immediately plaintiff wantted to know why he was taken out of physical

(8)

therapy. Defendant Preston told plaintiff that "the powers that be at your prison pulled you out. They said no more physical therapy."

Plaintiff complained to Dr. Preston that because none of the nurses — male or female — would help him to get to the toilet in the cell, he fell out of his bed while trying to get to his wheelchair, and injured his hip and elbow. Defendant Preston told plaintiff that he was not in the physical therapy clinic anymore, he would have to do the best be could on his own.

Plaintiff also asked that if they seen the type of pain medication he was on while in the hospital and physical therapy clinic why would he ever lower and down grade the medication? Defendant Preston said that plaintiff was only allowed the standard of care, no more.

Despite how angry this made plaintiff — considering the condition he was in — plaintiff kept his composer.

Plaintiff then asked if there would at least be someone to help him to do his rehabilitation excersices. Defendant simply shook his head and repeated that plaintiff would have to do the best that he could on his own.

Plaintiff request a workout rubber band like he was taught to use in physical therapy and was suprised to find out that they had some for me. It was provided by a nurse later that day. However, trying to rehabilitate your own body with only fuffteen days of experience and know how, basicly no pain medication (because what was provided did not work) and continueing to fall so much that even the still numb parts of plaintiff's body was starting to hurt; it was like being in hell everyday. However, plaintiffs will to walk again was strong, and over the next eighteen (18) days plaintiffs pain and anguish was rewarded when he stood up on his own two legs

and, without falling, was finally able to walk without the need to hold onto the walker. It was just a step or two, but it also wasn't promised. So holding onto the walker and taking a few steps, from having to slide out of my bed and crawl over to the toilet, made plaintiff feel human again. But plaintiff should not have had to suffer in this way, it was the duty of the Department of Corrections and their contracted paid medical staff to provide the basic human needs to this plaintiff due to the fact that he could not do this for himself.

Helling v. Mckinney, 509 US 32 Quoting, DeShaney v. Winnebago County Dept of Social Services, 489 US 189, 199-200, 103 L.Ed. 2d 249, 109 S.Ct. 998 (1989): "[W]hen the state takes a person into it's custody and holds ~~them~~ him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being... The rationale for this principle is simple enough: when the state by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety - it transgresses the substantive limits on state action set by The Eighth Amendment..."

Also, due to the fact that plaintiff was disabled at the time of this violation of his rights, Defendants also violated the Americans with Disabilities Act under 42 U.S.C §§ 12101-12213 ~~...~~

(10)

Particularly, Title II of the Americans with Disabilities Act, which
states:

> [N]o qualified individual with a disability shall, by reason
> of such disability, be excluded from participation in or be
> denied the benefits of the services, programs, or activities
> of a public entity, or be subjected to discrimination by
> any such entity.

As well as Section 504 of the Rehabilitation Act of 1973, which
states:

> No otherwise qualified individual with a disability . . .
> shall, solely by reason of her or his disability, be excluded
> from the participation in, be denied the benefits of, or
> be subjected to discrimination under any program or
> activity receiving Federal financial assistance or under
> any program or activity conducted by any [Federal]
> Executive agency.

This plaintiff, who was suffering from paralysis from his chest to his
feet, at the time of this violation from all defendants in his §1983
claim, is a 'qualified individual' under these laws under the following
statutes:

42 U.S.C. §12102  Definition of disability

As used in this Act:

(1) Disability. The term "disability" means, with respect to

(11)

an individual —

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment

(2) Major life activities.

(A) In general. For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

(B) Major bodily functions. For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

(3) Regarded as having such an impairment.

(A) An individual meets the requirement of "being regarded

(12)

as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

42 U.S.C. § 12131   Definition

As used in this title:

(1) Public entity. The term "public entity" means—

(A) any State or local government;

(B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

(C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 103(8) of the Rail Passenger Service Act [49 USCS § 24102(4)].

(2) Qualified individual with a disability. The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barries, or the provision of

(13)

auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

## 42 U.S.C. § 12132   Discrimination

Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

As this court will notice, title 42 section 12102 shows that one of the 'Major life activities', under the term "disability" is walking; and as plaintiff has already stated above he was paralyzed and unable to walk. This "disability" was the reason for the defendant's violation of the Eighth Amendments cruel and unusual punishment clause. Due to plaintiffs paralyzation, he was put on a cell by himself on the first floor – as opposed to where plaintiff originally lived; the third floor – of his housing unit in the prison with no one to help him achieve ~~major~~ major life activities.

Title 42 section 12131 defines "qualified individual with a disability" as "an individual with a "disability" who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural communication, or transportation barriers, or the provision of auxiliary

(14)

aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

As explained right above the definition for 'qualified individual with a disability' it shows that a public entity mean any state or local government; and any department, agency, special purpose district, or other instrumentality of a State or states local government; Therefore, being a person with a 'disability' under title 42 Section 12102 due to being paralyzed, and a 'qualified individual with a disability under title 42 Section 12131 in meeting the essential eligibility requirement for the receipt of services (Medical Services) provided by a public entity, which in plaintiff's case would be SCI-Huntingdon who is a public entity of The Commonwealth of Pennsylvania, plaintiff has established a Title II violation of the Americans with Disabilities Act as well as a Section 504 of the Rehabilitation Act of 1973 under title 29 U.S.C. § 794 due to plaintiff's belief that SCI-Huntingdon and the State of Pensylvania receives ferderal funding.

29 U.S.C. § 794   Nondiscrimination under Federal grants and programs.

(a) Promulgation of rules and regulations. No otherwise qualified individual with a disability in the United States, as defined in Section 7 (20) [29 USCS § 705 (20)], shall, solely by reason by her or his disability, be excluded from participation in, be denied the benefits

(15)

of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

(b) "Program or activity" defined.   For the purpose of this section, the term "program or activity" means all of the operations of—

(1) (A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

(B) The entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;

(16)

<u>Pennsylvania Department of Corrections v. Yeskey</u>, 524 US 206, 141 L. Ed. 2d 215, 118 S.Ct. 1952 (1998) Held: State prisons fall squarely within Title II's statutory definition of "public entity", which includes "any . . . instrumentality of a state . . . or local government." §12131 (1)(B).

<u>Wilkins-Jones v. County of Alameda</u>, 859 F. Supp. 2d 1044 An ADA violation is established where a plaintiff proves that: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability". <u>Duvall v. County of Kitsap</u>, 260 F.3d 1124, 1135 (9th Cir. 2001) (citing <u>Weinreich v. Los Angeles County Metropolitan Transp. Auth</u>, 114 F.3d 976, 978 (9th Cir. 1997)).

Plaintiff has already, and will continue to, show deliberate indiffrence on behalf of the defendants in his case.

While at SCI-Rockview's infirmary under the care of Defendant Preston, plaintiff had gotten up to use the restroom on the night of October 29, 2021 (Grievance #953008) and, despite not having a walker to aid him, plaintiff's whole left leg gave out on him and he fell straight to the ground where he landed on his butt. This hard fall was very painful to his neck,

(17)

lower back, upper back (which was a new pain), and what felt like my lower spine. (I would find out on January 19, 2022 that an X-ray revealed that I had experienced a herniated disk in that fall) The next day, October 26, 2021, plaintiff told Defendant/Doctor Preston about the fall and how it caused him not just more pain in the usual areas of his spinal surgical area of his neck, and lower back, but now also in his upper back and what he thought was his lower spine. Plaintiff requested a stronger pain medication than just the extra strength tylenol he was being given (which helped in no way at all), but Defendant Preston denied plaintiff a stronger pain medication despite the increased and newer pains he was experiencing.

Greeno v. Daley, 414 F.3d 653 (2005) To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 US 294, 297, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991)). The officials must know of and disregard an excessive risk to inmate health; indeed they must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference {2005 U.S. App. LEXIS 16 } " Farmer, 511 U.S. at 837. This is not to say that a prisoner must establish that officials intended or desired the harm that transpired. Walker, 293 F.3d at 1037. Instead, it is enough ~~to~~ to show that defendants knew of a substantial risk of harm to the inmate and disregarded the risk. Id. Additionally, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk

(18)

was obvious". Farmer, 511 U.S. at 842

The very fact that this plaintiff came from a physical therapy clinic where he was taking medications for his pain that was stronger than what Defendant Preston gave him—after Doctor Preston would have reviewed his medical chart from the physical therapy treatment center and would have known that this plaintiff was on a stronger pain medication—it is clear that Defendant Preston made a conscious decision to lower plaintiffs pain medication despite the fact that experts on the matter on which plaintiff was dealing with (paralyzation) gave him a stronger pain reliever. Then, to add to this already clear deliberate indifference to this 'qualified individual with a disability' under Title II of the Americans with Disabilities Act (42 U.S.C § 12132), after plaintiff's fall and being made aware of even more pain suffered by this disabled person, under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794) being as though plaintiff believes that Defendants recieve federal financial assistance, Defendant Preston again made a conscious decision to refuse this disabled plaintiff stronger pain medication.

Plaintiff believes that what Defendant Preston refused to do and in how he refused to do it satisfies the Farmers requirement to show a "sufficiently culpable state of mind" with regards to Defendant Preston.

## Defendant Gabrielle Nalley

Before being healed from surgery, or even good enough to walk anywhere close to normal, plaintiff was sent back to SCI-Huntingdon from SCI-Rockview on Friday November 12, 2021. Immediately he was put into D-Max where he would do his fourteen (14) day quarentien before going to population. Plaintiff put in a Sickcall and was seen on Monday November 15, 2021 by Physicians Assistant Nalley. Plaintiff requested to be sent back to the physical therapy clinic due to him still not being able to walk correctly and the pain it caused him to have to get up and do so much on his on. Defendant Nalley told him that he would be sent back to physical therapy on an out patient status where he would remain in the prison and be taken out to therapy everyday. In addittion plaintiff requested to be given a secound Mattress due to his neck and back pain, as well as his hip pain when on his sides. The double mattress was denied and plaintiff was forced to suffer the pain of the steal in his back and hips while he layed down. Plaintiff requested that he be able to stay on D-Max while he went to physical therapy and through his healing process. This too was denied. D-Max was mostly empty with about fourteen (14) cells to its use, and locked down where meals, medication, would be brought to the cells. An enviorment like this would have benefited plaintiff in his condition where he still could not walk properly, and to walk so much caused him so much pain. However, this is what plaintiff was forced to deal with when his fourteen (14) days of quarentien was over and he was sent back to population. On Thursday November 25, 2021 plaintiff was forced to leave D-Max where he had to push a cart full of his

own property which consisted of two full brown boxes of paperwork, one big locker full of food and hygene products, two bags full of clothes, and then the addition weight of this tall plastic blue cast. This was all forced upon a disabled person olny (76) Seventy-six days after under going spinal surgery and olny having fifteen (15) days of physical therapy. After forty-three (43) days of falling and getting back up while I was housed at SCI-Rockview where I was made to do my own physical therapy despite the excruciating pain in my neck, back, hips, legs, and spine. Still, SCI-Huntingdon and their staff had even more cruel and unusual punishment for this plaintiff to endure. Luckily the cellmate he was assigned seen his obvious condition and brought all of his property into the cell for plaintiff.

Being back in population came with a whirl-wind of its own challeges for plaintiff. Plaintiff was not placed on medical bedrest, despite his condition, so he was forced to get up and walk down and back up the long tiers to get his meals, medication, go to sickcalls, go to the medical department, and to the yards. Since he was not allowed his rubber-band to work out with at SCI-Huntingdon, plaintiff went to the yard and tried to walk as a work out so he did not lose the progress he'd already achieved on his own. Having a cellmate made it hard to work out in the cell, but despite the pain in his back, plaintiff stood over the sink and washed his clothes by hand to keep the strength in his legs.

Plaintiff requested a stronger pain medication and was finally given something stronger by a non-party medical staff member.

Finally, after twenty-two (22) days of torture, On December 14, 2021 plaintiff was made to pack up his own property once again and push another

(21)

big blue plastic cart down to property. Plaintiff was told that he would would be getting physical therapy from staff at SCI-Smithfied. That would turn out to be a lie. On December 22, 2021 plaintiff filed a Grievence regarding Defendant Nalley's cruel and unusual punishment of this plaintiff. Grievence #961211.

Defendant Nalley had the option of making plaintiff aware of how to obtain a double mattress to assist in the relief of pain to his body; due to the flimsy mattress he was given to sleep on, if it is true that medical does not assign or give double mattress's. Defendant Nalley also had the option of assigning plaintiff a medical lay-in status due to his condition of not walking properly because he was still healing up from a spinal surgery after being paralyzed. Instead he was forced to endure the constant pain of having to walk everywhere for everything like a normal unhendered person in population did.

<u>Walker v. Benjamin, 293 F.3d 1037 (2002)</u> (citing <u>Farmer v. Brennan, 511 U.S. 825, 834, 128 L.Ed. 2d 811, 114 S.Ct. 1970 (1994)</u>). "In the medical care context, the objective element requires that the inmate's medical need be sufficiently serious," <u>Gutierrez, 111 F.3d at 1369</u> The subjective element requires that the prison official acted with a sufficiently ~~serious~~ culpable state of mind.

Defendant Nalley has worked at SCI-Huntingdon as a Physicians Assistant for years and would know the medical lay-in procedure and what medical situationan inmate would need to be in to qualify for

(22)

a medical lay-in. To add to this, the fact that plaintiff was eventually transfered up to SCI-smithfield's medical infirmary because of his ~~body~~ ~~so~~ condition in and of itself speaks volumes of lack of care provided by Defendant Nalley. Facility Managers Response to Grievence #961211 even speaks to the fact that the condition was ~~bad~~ enough that this plaintiff was moved up to SCI-Smithfiled's infirmary unit. (copy enclosed) This response even speaks to the fact that plaintiff still needed physical therapy to heal his body. This show that Defendant Nalley, as a medical proffessional with years in ~~the~~ he faeld of practize, acted with a "sufficiently culpable state of mind."

<u>DeMallory v. Cullen, 855 F.2d 442, 445 (7Th cir. (1988)</u> Liability under The Eighth Amendment "requires, at a minumus, that the prison officials have realized there was imminent danger and have refused - consciously refused, knowingly refused - to do anything about it."

Defendant Nalley could have put this plaintiff on medical bedrest (lay-in) due to his condition, but `knowingly and consciously' **refuesed** to do anything that would benefit him in not only his healing process, but in his comfort regarding ~~either~~ reducing plaintiffs pain.
This not the first time where Defendant Nalley refused to give this plaintiff adequate pain medication and medical lay-in. In 2019 this plaintiff filed a §1983 with Defendant Nalley as a co-conspirtor

(23)

in failing to properly treat this plaintiff for his pain and treatment regarding a second (2nd) degree ~~burn~~ burnwound on his right ankle. Jose Montanez v. Robert Lynch, et-jal. 3:20-cv-97. This plaintiff was basely being tortured by Defendant Nalley by refusing to give anything stronger than Tylenol for his pain, and Defendant Nalley was among the medical staff this plaintiff requested a medical lay-in from. She refused him. This burn wound was so deep it caused nerve damage causing plaintiffs ankle to jump in spasms on its on. Just to walk on this ankle caused so much pain plaintiff can't even tell this court how he was able to get through it. Then when Defendant Nalley refused him a medical bed rest (lay-in) from work where he was on his feet all day... Plaintiff was lucky to have a job at the time where there was only two workers and his parter was understanding enough to do most of the hard stuff on his own. This should not have happened though. If it were not for the mental and emotional anguish suffered by this plaintiff (along with the pain) this plaintiff would have filed a timely grievence and the case would not have been dismissed. (This plaintiff has also included documents from case) However, this current §1983/ADA and section504 case just goes to show the type of person Defendant Nalley is when it comes to her treatment of this plaintiff and his safety and medical well being. She is deliberately indiffrent and obviously likes to distribute cruel and ~~unusual~~ unusual punishment on inmates she duslikes. She is a danger to the health, safety, and well being of medical patience she is put in charge of and she should no longer be allowed such power.

(24)

## Defendant David Edwards / SCI-Smithfield

Plaintiff was moved from SCI-Huntingdon up to SCI-Smithfields infirmary on December 14, 2021. Before the transfere plaintiff was told that he would be receiving Physical therapy at this infirmary. However, after meeting Defendant Doctor Edwards, it turned out to be a lie. Defendant Edwards informed platiff that he would not be receiving physical therapy there and that he was only there until he healed up from surgery. Plaintiff made Defendant aware as to the extreme amout of pain he was in and asked for an additional mettress besides the flimsey one he had. Defendant asked if plaintiff had a double mattress in his cell at SCI-Huntingdon. Plaintiff honestly answered saying no, he did not. Doctor Edwards reply was, "Well then, you won't be getting one here either." Plaintiff was eventually brought an "egg crate" to use for comfort instead of an additional mettress, however, this eggcrate was obviously not made for comfort, In Defendant Price's response to Grievence #96(211 she mentions an eggcrate and its actual inteded use (a copy is enclosed for consideration). The egg crate was olny given so it can be said that something was given for this plaintiff's pain. Plaintiff request stronger pain medications then what was being given from Defendant Edwards but he refused to give anything stronger then Tylenol, Plaintiff told Defendant that he had already been prescribed a stronger pain medication (plaintiff does not remember the name) while still down at SCI-Huntingdon. Defendant Edwards switched plaintiffs pain pills to the new pills but after plaintiff told him they did nothing for his pain Defendant refused to prescrieb anthing stronger.

(25)

Plaintiff has now been to three different facilities where, despite his condition, he is receiving the minimal care possible. If he receives any kind of care at all. Now he had to start writing Grievances again to hold these medical staff responsible for the cruel and unusual punishment he is once again receiving. Grievance #960262 was filed on December 20, 2021 concerning the fact that he still needed physical therapy.

Dr. Edwards had told this plaintiff that he would not be returning back to SCI-Huntingdon so he decided to try to get SCI-Smithfields powers that be to send plaintiff back to physical therapy. This was of course denied. Plaintiff spoke to Defendant Edwards about going back to physical therapy before this grievance, but the defendant stated that I should use my walker to walk back in forth in my cell. That there would be no more physical therapy.

On December 23, 2021 plaintiff filed Grievance #960931 about being denied a double mattress. This plaintiff has explained to this court numerous times in this motion about how bad the pain he was in was. He can only add now that the bed he was given to lay in had something like rails around the whole bed, so to try to sit up on the bed was painful to plaintiffs legs and back as his legs hung off of the bed causing plaintiff to be sitting awkwardly on the mattress. A double mattress would have helped with this issue due to the bed plaintiff was given to sleep in, not to mention the reduction in pain he would have experienced. But the fact that there was hospital beds available and being refused by Defendant Edwards to be given to this plaintiff amounted to deliberate indifference as well as cruel and unusual punishment

(26)

Rhodes v. Chapman, 452 U.S. 337, 69 L.Ed. 2d 59, 101 S.Ct. 2392 "an inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." 429 U.S., at 103, 50 L.Ed. 2d 251, 97 S.Ct. 285 (Estelle)

Id, at 452 U.S. 347  In Estelle v. Gamble, supra, we held that the denial of of medical care is cruel and unusual punishment because, in the worst case, it can result in physical torture, and, even in less serious case, it can result in pain without any penological purpose. 429 U.S., at 103, 50 L.Ed. 2d 251, 97 S.Ct. 285.

Walker v. Benjamin, 293 F.3d 1037; 2002 U.S. App. LEXIS 14 (citing) Delgado-Brunet, 93 F.3d at 345c a plaintiff claiming an Eighth Amendment violation must show the defendant's actual knowledge of the threat to plaintiff's health or safety, the defendant's failure to take reasonable measures, and the defendants subjective intent to harm or deliberate indifference.

Defendant Edwards was the facility doctor at SCI-Smithfield when this plaintiff was moved up to the medical infirmary that the defendant ever saw. When Defendant came into the cell to visit this plaintiff on plaintiff's first day at the facility he asked Defendant Edwards questions regarding why he was there, told defendant about the pain he was suffering from and where, as well as asked for an extra mattress. As explained earlier, all of these things were either denied to this plaintiff or explained

(27)

That plaintiff would not be getting physical therapy while at SCI-Smithfield. The deliberate indifference is shown where Defendant had the option of giving this plaintiff, who had already explained his pain situation to this defendant, a double mattress or hospital bed as well as stronger pain medication once defendant made him aware that the current medication was not working. Defendant Edwards would have gotten plaintiffs medical chart before or after he came to the infirmary. Therefore, Defendant was aware of plaintiffs condition and the amount of pain he would have been in due to the fact that he was himself a medical doctor. But for the sake of argument lets say he did not know. Defendant Edwards could have easily looked up the surgical doctors information and gotten his take on what plaintiff was currently dealing with at the time. Wether Defendant did this or not, plaintiff was housed at SCI-Smithfields infirmary from December 14, 2021 until ~~Dec~~ March 7, 2022. Plaintiff was continuously denied a double mattress or hospital bed and/or sufficient pain medication the whole entire stay. Plaintiff must again use these same two cases:

Haley v. Gross, 86 F.3d 641  "an Eighth Amendment claiment need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm" 114 S. Ct. a 1981 (Farmer)

Demallory v. Cullen, 855 F.2d 442, 445 (7Th Cir. 1988) Liability under the Eighth Amendment "requires, at a minimus, that the prison

(28)

official have realized there was imminet danger and have refused -
consciously refused, knowingly refused - to do anything about it".

Defendant Edwards was deliberately undiffrent to the pain this plaintiff,
Who was still healing from being paralyzed and having to go under surgery
to correct the paralyzation. Plaintiff was in a degenerative condition
When he was paralyzed and had to crawl around his cell for three (3) days,
when he pulled the weight of his entire back and body up to the sink with
only his two (2) arms and then could only use his one (1) left arm to hold
his body, his entire body, while he used his one (1) right arm by itself to
soap up and wash his body. Then when plaintiff was taken out of
Physical Therapy still not able to walk and forced to learn how to walk
all on his own for over a mounth... This is all of the pain that plaintiff
Was forced to endure at the hands of Defendant Edwards due to his
refusal to give stronger pain medication and/or a double mattress or hospital
bed which were available.

Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003) "The Eighth Amendment
forbids not only deprivations of medical care that produce physical
torture and lingering death, but also less serious denials which cause or
perpetuate pain." (quoting Todardo v. Ward, 565 F.2d 48, 52 (2nd Cir.
1977)

In Brock, it specifically rejected the notion that "only 'extreme pain'
or a degenerative condition" meets the legel standard.

(29)

In the hospital and even the physical therapy treatment center this plaintiff was afforded pain medication that took the pain away, and only when he was put back into a Pennsylvania Department of Corrections enviorment was his pain medication ever reduced to Tylenol; despite the knowledge of every defendant in this motion that had access to this plaintiff's medical records, and therefore would have known that while they may not be able to give plaintiff the exact ~~types~~ of medication that the hospital gave, they could have ~~definite~~ definitley given him something stronger that Tylenol considering the condition he was in. Especially after plaintiff made them aware that he was still in pain.

~~Especially~~ Langley v. Coughlin, 888 F-2d 252,254 (2nd Cir. 1989) (officials must provide "reasonably necessary medical care ... which would be available to [the prisoner] if not incarcerated").

Barrett v. Coplan, 292 F. Supp. 2d. 281, 285 (D.N.H. 2003)
" 'Adequate medical care' requires treatment by qualified ~~acceptable~~ medical personnel who provides services that are of a quality acceptable when measured by prudent proffessional standards in the community, tailored to an inmate's particular needs, and that are based on medical considerations"

Wherefore, after consideration of plaintiff's Motion in opposition and the facts laid out herein, plaintiff respectfully requests that this Court dismiss's Defeadants Motion to Dismiss.

(30)

Respectfully Submitted,

_Jose Montanez_

_____

pro se, Jose Montanez
#KW8233
SCI-Huntingdon
1100 Pike Street
Huntingdon, PA 16654



US POSTAGE ᴾⁱᵗⁿᵉʸ ᴮᵒʷᵉˢ
$ 009.85⁰
ZIP 16652
0000372161 APR 25 2023

INMATE MAIL
PA DEPARTMENT
OF CORRECTIONS

RECEIVED
SCRANTON
APR 28 2023
PER _____ DEPUTY CLERK

Office of The Clerk
United States District Court
Middle District of Pennsylvania
235 N. Washington Avenue
P.O. Box 1148
Scranton, PA 18501-1148

Jose Montanez
#KW8233
SCI-Huntingdon
1100 Pike Street
Huntingdon, PA 16654

USPS TRACKING #

9114 9022 0085 2228 6596 34

PRIORITY
★ MAIL ★

UNITED STATES
POSTAL SERVICE®

TRACKED ★★★
INSURED

For Domestic and International Use