# IN THE UNITED STATES DISRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Jose Montanez,
    Plaintiff

V.

Paula Price, et, al
    Defendants

:
Civil Action No.
3:22-CV-1267

Judge Robert D. Marianni

Jury Trial Demanded

FILED
SCRANTO
APR 28 2023
PER _____
DEPUTY CLERK

## Plaintiffs Motion in Opposition to Defense Counsels Motion to Dismiss

Now comes, Jose Montanez, Pro Se Plaintiff in the above mentioned Civil Action Claim, with his Motion in Opposition to Defendants Paula Price, Melanie Wagman, R. Ellers, Superintendent Wakefield, Superintendent John Rivello, and Commonwealth of Pennsylvania's Defence counsels Motion to Dismiss.

All named defendants (with the exception of the Commonwealth of Pennsylvania) in this civil Action claim were - at the time of these constitution violations - Acting under color of State Law and are Liable under Title 42 U.S.C.S. §1983 and are therefore personally responsible for constitutional violations that continued to happen to this Plaintiff after he sought there help in trying to get relief for his suffering - from thier subordinates in most cases - and in at least two cases, the suffering they themselves caused to happen due to their in actions.

State of Maine v. Thiboutot, 448 US 4 S.Ct. 2502 (1980) Held:
Section 1983 Provides: "Every person ~~under~~ who, under color of any
statute, ordiance, regulation, custom, or usage, of any State or
Territory, subjects, or causes to be subjected, any citizen of the
United States or other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at
law, suit in equity, or other proper proceeding for a redress".

Thiboutot, went on to quote Greenwood v. Peacock, 384 US 808, 829-
830, 16 L. Ed. 2d 944, 86 S.Ct. 1800 (1966), saying that under 1983
state "officers may be made to respond in damages not only for violation
of rights confered by federal equal civil rights laws, but for violations
of other federal constitutional and statutory rights as well"

## Superintendents Wakefield and John Rivello

Superintendents are the overall supervisors of the facilities they are
in charge of overseeing. Theirs is the final say in the grievance process
and upholding of all policies, rules and regulations in their charge. For
Superintendent Wakefield it is SCI-Smithfield. For Defendant Rivello
it is SCI-Huntingdon.
This plaintiff reached out to each of these defendants for their help in
the cruel and unusual punishment and deliberate indifference he was
experiencing at the hands of their subordinates.

(2)

On January 2, 2022 plaintiff wrote and sent his first grievance appeal to Defendant Superintendent John Rivello making him aware as to his condition regarding having spinal surgery and only having two (2) weeks of physical therapy he still had a long road to recover for his body. Instead of investigating the facts of plaintiff's claims and finding out if he really was in need of additional physical therapy and was suffering from pain and anguish as he claimed, defendant just recklessly took the word of not the healthcare administrator or the doctor in charge of the patience in the prison, but the word of a R.N.S. a Registered Supervising Nurse. This nurse is Defendant Davis, someone who this plaintiff does not know or has ever seen before. Defendant Rivello was deliberately indiffrent to the safety and healthof this plaintiff after being made aware of the pain and anguish he was being forced to endure at the hands of his subordinates. Therefore, Defendant Rivello was creating and allowing to exsist a policy of burying his head in the sand.

Farmer v. Brennan, 511 U.S. at 843 n.8; Velez v. Johnson, 395 F.3d 732, 736 (7th Cir. 2005) (officer notified of risk could be held liable even if he didn't know the details of the risk; to hold otherwise "would essentially reward gaurds who put their heads in the sand by making them immune from suit ~~the~~ the less a gaurd knows the better. That view is inconsistant with Farmer"

City of Canton v. Harris, 489 US 378, 385, 109 S.Ct. 1197 (1989)
"Supervisors can be held liable for: 1) Their own culpable actions or in actions in the ~~training~~ training, Supervision, or control of Subordinates;

(3)

2) Their acquiesence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a callous indiffrence to the rights of others".

(The last grievence plaintiff spoke of was #956603 and this next one will be regarding grievance #943670. Plaintiff would have enclosed additional copies for consideration but can not due to finacial reasons. All enclosed copies are extra or where made in advance of Motion)

Defendant Rivello's callous indiffrence continued to show in his response to grievence appeal #943670 where plaintiff explained to him the treatment he was forced to endure at the hands of his subordinates. Defendant Rivello claims that a diffrent (R.N.S) Registered Nursing Supervisor (Non-Party) Lynch explained that the assessment of this plaintiff did not warrant a trip to the hospital. However, the fact that plaintiff was paralyzed, could not; was/had to be moved from the third tier down to the first floor tier for some reason was not considered in Defendants desicion

(4)

to deny plaintiffs grievence for relief. It is obvious here that once again Defendant Rivello was being ~~the~~ deliberately indifferent to the cruel and unusual punishment attributed by his subordinates onto this plaintiff

Wilson v. Seiter, 501 US 298-299, "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's intrests or safety . . . It is obduracy and wantoness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connect with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

Defendant Rivello has shown a complete disregard for this plaintiffs heath and safety while in his

(5)

facility, and has an obvious practice of "do what you want and I'll back you up" with his staff in the medical department.

Plaintiff has enclosed more recent grievance denials regarding this and even other inmate health and safety issues Defendant Rivello refuses to properly investigate or even address. Life or death, if your fifteen (15) days are up to file a grievance, you will be rejected by him and his office.

Gutierrez v. Peters, 111 F.3d 1375 quoting Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) ("In determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference on the individual case, indicating more than mere negligent or isolated occurrences of neglect."

Regulations promulgated by the Department of Health and Human Services pursuant to the Rehabilitation Act prohibit "criteria or methods of administration that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's

(6)

program with respect to the handicapped." 45 CFR § 84.4(b)(4)(ii)(1984) Alexander v. Choate, 469 U.S. 304-305

However, this is the administration that has been adopted by not just Defendant Arello, but by Defendant Wakefield as well.

Plaintiff wrote his initial grievance on December 20, 2021 (Grievance #960262) about the fact that Dr. Edwards had told him that he would not be going back to SCI-Huntingdon, and being as though he would remain in SCI-Smithfield until healed, he was requesting to be sent back to physical therapy.

Instead of addressing the "physical therapy" and "cruel and unusual punishment" and "Pain" aspect of the grievance, Defendant Wakefield complained about the plaintiff using the words "officially requesting" and said that the grievance was untimely.

The fact that this plaintiff was experiencing "cruel and unusual pain and punishment" was completely ignored by defendant. He stated that plaintiff had not provided him with a date he allegedly spoke to Dr Edwards or the practitioner for timliness issues. No concern about the plaintiffs

(7)

health or well being.

_Camilo-Robles v. Hoyos, 151 F.3d 1, 6-7 (1st Cir. 1998)_ "Supervisor may be held liable under §1983 if he/she formulates a policy or engages in a practice that leads to a civil rights violation committed by another"; "supervisor liability does not require a showing that the supervisor had actual knowledge of the offending behavior; he/she may be liable for forseeable consequences of such conduct if he/she would have known of it but for his deliberate indiffrence".

Plaintiff made Defendant Wakefield aware of the constitutional violations that were happening to him and willfully ignored plaintiffs plea to him for his help on his grievance when he said: "I request that you put a stop to this cruel and unusual pain and punishment and please send me back to physical therapy". By ignoring plaintiff's plea, Defendant Wakefield did indeed formulate a practice that lead to a continuation of the cruel and unusual punishment of this plaintiff. The continuation of pain and

(8)

suffering due to not receiving adequate pain medication, The contusion of having to lay in a bed which causes this plaintiff pain due to being refused a double mattress or hospital bed (Grievance # 960931). Plaintiff made Defendant Wakefield aware of the fact that he was not receiving proper medical treatment at the hands of his subordinates in the medical department; but instead of actually investigating the issue, he believed what he was told by the very people denying this plaintiff proper medical care. Plaintiff was not given an egg crate "mattress" as Defendant Wakefield claimed in his response. It was more like a matt for keeping one part of your body from touching something. No comfort or thickness to it at all. The back brace was for when I was up walking around, and the fact that this plaintiff never received any stronger pain medications made the back brace not much use and the doctor knew this. The facts here are clear. Defendant Wakefield ignored the cruel and unusual punishment and pain this plaintiff was going through, which is a deliberate indifference to an Eighth Amendment Violation, and it therefore formulated a practice

(9)

of inaction which allowed the Eighth Amendment violation to continue and thereby making himself liable under 42 U.S.C §1983.

Skinner v. Uphoff, 234 F. Supp. 2d 1216 (2002) Quoting: Farmer "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm" 511 U.S. at 842

## Defendant Melanie Wagman

August 28, 2021, Saturday at or around 1:00 PM is when this plaintiff discovered he could not walk and was paralyzed. After notifying a correctional officer of this medical emergency the Medical department was called and ultimately Defendant Wagman came with a wheel chair. After coming down from the third tier, with some help from two gaurds, plaintiff was set in the awaiting wheel-chair and then pushed down to the medical department, Defendant Wagman barely pushed past the thresh-old of the door into the treatment room when she stopped and had a male nurse take

plantiffs vitals while she did some type of checks on his legs while he stayed in the wheel-chair. Afterwards Defendant Wagman went into the nurses office and made a phone call to the on call physician on that day, Doctor Mahli, who told the defendant to move this plantiff to a bottom tier cell and he would see him the next day, at least that is what Defendant Wagman told this plantiff as she wheeled him out of the medical department and back to his housing unit. Plantiff exclaimed to this defendant that he needed to got to a hospital. Defendant Wagman replied, "Well, you're not going to the hospital." When plantiff was pushed back onto his housing unit he imediately yelled to the block sergeant that he wantted a Grievance Form. Sergeant Bullick asked whet plantiff wantted a Grievance for and Defendant Wagman replied, "because he wants to go to the hospital" and she let out a laugh. Defendant Wagman pushed plantiff all the way to the end of the tier to cell 1027 and opened the cell door and told plantiff to get out of the wheelchair. Nurse Mel as this defendant ~~was~~ is known to the inmate population

(11)

knew that it was her job to help this paralyzed medical patient into his cell but chose not to. Upon seeing that he would not receive any help from this medical staff member plaintiff was forced to drag his limp paralyzed body out of the wheelchair and onto the floor where I had to use my arms to drag my entire body across this filthy cell floor until I reached the bottom bunk and had to ~~the~~ pull my body onto it from the floor. Defendant Wagman had said during this time "Oh God! Stop faking it!"

Defendant Wagman's refusal to help this plaintiff caused him so much back, and neck, and arm pain he cried when she left. The mental and emotional duress and embarrassment was like nothing he'd ever experienced before in his life. It amounted to cruel and unusual punishment, an Eighth Amendment violation, and deliberate indifference.

Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285, 291, 50 L.Ed. 2d 251, 260 (1976)("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'

(12)

prescribed by the Eighth Amendment. This is true whether the indifference is manifested by Prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.")

Salahuddin v. Goord, 467 F.3d 263, 280 (2nd Cir. 2006) (defining sufficiently serious as "whether 'a reasonable doctor or patient would find it important and worthy of comment', whether the condition 'significantly affects an individual's daily activities', and whether it causes 'chronic and substantial pain'" (Quoting- Chance v. Armstrong, 143 F.3d 698, 707 (2nd Cir. 1998)

Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004) (holding that a claim alleging a back condition that resulted in pain so serious it caused the prisoner to fall down sufficiently pleaded a serious need.

(13)

Defendant Wagman stood by and watched this plaintiff crawl across a filty prison floor in pain and did nothing to help him. This was cruel and unusual punishment in its worst form. The hate and anger that must have been in the defendant to behave in such a way questions if such a person should be allowed to live freely in a civilized society.

Estelle v. Gamble, 429 U.S. 97, 103 (1976); Brown v. Plata, 131 S.Ct. 1910, 1928 (2011) "Prisoners retain the essence of human dignity inherent in all persons. Respect for that dignity animates the Eighth Amendment prohibition against cruel and unusual punishment . . . A prison that deprives prisoners basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society."

## Defendant Paula Price

Defendant Price is currently being sued in her individual capacity due to the fact that she no

longer holds the official position of Healthcare
Administrator that she held during the time these
violations occured.

On August 28, 2021, when this plaintiff was
found to be paralegic, it is currently unclear as
to whether Doctor Mahli notified Healthcare
Administer Paula Price regarding this medical emergency
and the decesion he made about waiting until the
next day to go and see him. Either way, she is
liable under the law as the prisons Healthcare
Administrator and Doctor Mahli's immediate supervisor.

City of Canton V. Harris, 489 US 378, 385, 109 S.
Ct. 1197 (1989) "Supervisors can be held liable for:
1) Their own culpable actions or in actions in the
traing, supervision, or control of subordinates; 2)
Their acquiesence in the constitutional deprivation
of which a complaint is made; or 3) for conduct
that showed a callous indiffrence to the rights of
others".

Defendant Price should have had a practice or policy
in place to notify her of all medical emergencies and
the actions taken in response to the emergencies.

(15)

Again, it is unclear as to whether Defendant Price was aware that this plaintiff was put back into a cell while he was paralyzed over a three (3) day period where he continuously and uncontrollably urinated on himself while in extreme physical, mental, and emotional anguish until someone finally made a decision to send him to the emergency room (Not to the hospital for a scheduled MRI to find out if the patient was dealing with restless leg syndrom or something of that nature; but the emergency room, where people go for emergencies.) However, despite having such a policy in place or not, Defendant Price did or did not know of ~~such~~ plaintiff's condition and it was at her hands, as the prisons medical supervisor, that this plaintiff was made to suffer for those three (3) days.

Miller V. King, 384 F.3d 1248, 1261 (11Th Cir 2004) (Holding that paraplegia with an inability to control passing urine is a serious medical need)

Johnson V. Bowers, 884 F.2d 1053, 1056 (8Th Cir. 1989) determining that prison must provide treatment when a "substantial disability" exists.

(16)

Even after going to the hospital and having surgery on his spine, plaintiff was sent to a physical Therapy clinic as recommended by the surgeon, and olny fifteen days into the treatment he was pulled out by correctional officers and taken to a prison (SCI-Rockview) infirmary where he was told that he would be receiving no more physical Therapy.

Plaintiff, unsure as what to do, wrote a grievance on October 15, 2021 (Grievance #951237) regarding being denied physical therapy. Defendant Price responded to the grievance in an Initial Review Response saying that it was all SCI-Rockview medical providers and the physical therapy clinic who made all of this plantiffs medical decisions and SCI-Huntingdon was not at fault. However, plantiff is a SCI-Huntingdon inmate. Therefore, to be able to be taken out of Encompass Health (Physical Therapy clinic) and transferred over to SCI-Rockview's infirmary, that has to be done by the medical providers at SCI-Huntingdon, and approved by SCI-Huntingdon Healthcare Administrator and Superintendent. As this plaintiff has already said above, during the times of these violations

(17)

Defendant Paula Price was the Healthcare Administrator. This is also shown through out the initial review responses authored by Defendant Price that this plaintiff has already sent to the court. So it was therefore Defendant Price who originally signed off on taking plaintiff out of Encompass Health while he was still unable to walk and put into a prison infirmary where he was no longer given any physical therapy treatment which was recommended by the surgical doctor. Plaintiff remembers that the doctor told him he would need at least six to eight maunths of physical therapy if he wanted the best chance at walking again. Defendant Price stopped the physical therapy after only fifteen (15) days.

Johnson v. Wright, 412 F.3d 398, 404 (2nd Cir. 2005) Holding that "a deliberate indiffrence claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians"[4]

Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285, 291, 50 L.Ed. 2d 251, 260-61 (1976) Holding that "intentionally interfering with the treatment

(18)

once prescribed" can constitute an Eighth Amendment claim); see Lawson v. Dallas County, 286 F.3d 257, 263 (5Th Cir. 2002) affirming disregard for follow up-care instructions for paraplegic could be deliberate indifference.

After arriving back at SCI-Huntingdon on November 12, 2021 plaintiff requested to be sent back to physical therapy through the sick call system and gave medical staff time to set it up for plaintiff to be taken back to physical therapy before choosing to grievance the issue before the fifteen (15) days ran out and he no longer could take the issue to higher prison officials. Grievance #956603 was filed on November 23, 2021 regarding being taken back to physical therapy. Plaintiff was not taken back to physical therapy; and on December 22, 2021 plaintiff filed Grievance #961211 about not being taken back to treatment and the cruel and unusual punishment he was forced to endure despite his unhealed condition after surgery. Defendant Price's response to this grievance came over a month late in her Initial Review Response dated February 7, 2022 where she gave excuse after excuse for her subordinates

(19)

inappropriate behavior regarding the torture he was put through at the hand of Physician Assistant Gabrielle Nalley (📌 see Motion in opposition regarding medical Defendants) Therefore, this showed that she — Defendant Price — approved of this plaintiff being forced to push a big cart full of his own property from one housing unit to another while still unable to walk properly and in extreme back, neck, leg, and hip pain. Defendant Price was okay with Defendant Nalley denying plaintiff medical bed rest (lay-in) and forcing him to walk down long tiers for his food and medications. Defendant Price, as the prisons Health care Administrator allowed these practices to take place due to the fact that she had no policy or rule in place to avoid them, therefore she is just as responsible for her subordinates actions under the law.

Greeno V. Daley, 414 F.3d 645-55 (7th Cir. 2005) (treatment "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate [plaintiff's] condition"); id at 655 ("doggedly persisting in a course in a course of treatment known to be ineffective")

(20)

## Defendant Ellers

Plaintiff was at SCI-Rockview on October 20, 2021 on the night he fell while trying to get to the restroom. The next day October 21, 2021 he was seen by Doctor Preston to make him aware of the fall and the increased pain and new pain he was experiencing as a result of the fall. While Doctor Preston refused to give plaintiff stronger pain medication he told plaintiff he would order an X-ray for the new pain in plaintiffs' spine. When a week past and no X-ray was done plaintiff filed a grievance, #953008 filed on November 2, 2021, and on November 30, 2021 he received a Initial Review Response from SCI-Rockview's Healthcare Administrator -at the time- R. Ellers. Defendant Ellers reiterated the facts revolving around the grievance and stated that finally Dr. Preston did order the X-ray on November 4, 2021 and that the results were negitive, as if there was nothing wrong with plaintiff as a result of his fall. This was not true.

While plaintiff was at SCI-Huntingdon from November 12, 2021 until December 14, 2021 he requested that the X-ray taken at SCI-Rockview be sent to

(2₵)

his nuerosurgeon to look at, and as a result of that, it was discovered that the X-ray showed that plaintiff suffered a herniated disk as a result of his fall.

Plaintiff suffered additional pain due to this incident and due to Defendant Ellers lie as to the result of the X-ray he was refused stronger pain medications which may have been given had the truth about his herniated disk been told.

Roe v. Elyea, 631 F.3d 843, 862-63 (7th Cir. 2011) (Prescribing treatment without considering individuals inmates condition constituted "a failure to exercise medical - as opposed to administrative - judgement at all.")

Except in this case, it was Defendant Ellers lie that interferred with proscribing any threatment at all.

Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995 medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience" constitutes deliberate indifference).

(22)

All of the additional pain, due to the herniated disk suffered by plaintiff, can be attributed to Defendant Ellers purposeful misleading of his X-ray results. Plaintiff was no longer at SCI-Rockview on November 30, 2021 when Defendant answered his grievence, as defendant was sent back to SCI-Huntingdon on November 12, 2021 while he was still not yet healed from his surgery. There was no reason for this defendants dishonesty concerning the X-ray results except to cause this plaintiff the additional pain he indeed did cause him.

Brock v. Wright, 315 F.3d 158, 163 (2nd. Cir. 2003) "the Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain"

Defendant Ellers actions were unnecessary, unproffessional, inflicted ~~pain~~ purposely for the reason of causing pain and cruel and unusual punishment. Plaintiff has never even met this Defendant in person. This goes to further show the state of mind of this Defendant when he

(23)

Greene v. Daley, 414 F.3d 653

To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind." Farmer, 511 US at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297, 115 L.Ed. 2d 271, 111 S.Ct. 2321 (1991) The official must know of and disregard an excessive risk to inmate health; indeed they must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference. Farmer, 511 U.S. at 837. This is not to say that a prisoner establish that officials intended or desired the harm that transpired. Walker, 293 F.3d at 1037. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk.

Defendant Ellers obtained the true results of the X-ray and instead of relaying the true results, he chose to disregard the truth and told the plaintiff, as well as medical staff at SCI-Huntingdon, that the results were "negitive" and therefore causing plaintiff to suffer the additional pain from the herniated disk.

(24)

Wherefore, with the court considering this plaintiff's motion in opposition and facts laid out therein, Plaintiff requests that this court grants his Motion in Opposition and not dismiss plaintiff's claims.

Respectfully Submitted,

April 24, 2023

Pro Se, Jose Montanez
KW8233
SCI-Huntingdon
1100 Pike Street
Huntingdon, PA 16654

(25)

Jose Montanez
#KW8233
SCI-Huntingdon
1100 Pike Street
Huntingdon PA 16654

US POSTAGE PITNEY BOWES
ZIP 16652 $ 009.85
02 4W
0000372161 APR 25 2023

INMATE MAIL
PA DEPARTMENT
OF CORRECTIONS

RECEIVED
SCRANTON

APR 28 2023

PER _____ DEPUTY CLERK

Office of The Clerk

United States District Court
Middle District of Pennsylvania
235 N. Washington Avenue
P.O Box 1148
Scranton, PA 18501-1148



USPS TRACKING #

9114 9022 0085 2228 6596 34

LABEL 107R Aug. 2013
7690-17-000-9699

PRIORITY
★ MAIL ★

TRACKED
★ ★ ★
INSURED

UNITED STATES
POSTAL SERVICE®

For Domestic and International Use     Label 107R, May 2014