IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE MONTANEZ, | : | Civil No. 3:22-cv-1267 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| PAULA PRICE, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Jose Montanez ("Montanez"), an inmate confined at the State Correctional

Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon"), initiated this action pursuant to 42

U.S.C. § 1983.  (Doc. 1).  The matter is proceeding via an amended complaint.  (Doc. 24).

Named as Defendants are Healthcare Administrator Paula Price, Nurse Melanie Wagman,

Registered Nurse Supervisor Davis, Healthcare Administrator R. Ellers, Superintendent

Wakefield, Superintendent John Riviello, and Mary Patton (collectively, the "Commonwealth

Defendants"), and WellPath, LLC, Dr. Preston, Dr. Rajinder Mahli, Dr. David Edwards, and

Gabrielle Nalley, P.A.-C (collectively, the "Medical Defendants").  Presently pending before

the Court are Defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure

12(b)(6).  (Docs. 27, 29).  For the reasons set forth below, the Court will grant Defendants'

motions.

I.    **Allegations of the Amended Complaint**

On August 28, 2021, Montanez was in his cell when he attempted to stand up to use the bathroom.  (Doc. 24, p. 4).  Montanez alleges that his legs gave out when he stood up, and he realized his body was numb.  (*Id.* at pp. 4-5).  Montanez notified an unidentified correctional officer who was walking by the cell.  (*Id.* at p. 5).  The correctional officer and Sergeant Bullick[1] then helped Montanez walk down the stairs.  (*Id.*).  Nurse Wagman was waiting with a wheelchair and wheeled Montanez to the medical department.  (*Id.*).  Once in the medical department, Montanez's vitals were checked, and Nurse Wagman examined his legs.  (*Id.*).  Nurse Wagman then called Dr. Malhi, who stated that Montanez should be moved to the first tier, and he would examine Montanez the next day.  (*Id.* at pp. 5-6).  Montanez alleges that he told Nurse Wagman he "needed to be taken to a hospital," but she denied his request.  (*Id.* at p. 6).  Nurse Wagman then wheeled Montanez to a cell, where he requested a grievance form from Sergeant Bullick.  (*Id.*).

The following day, August 29, 2021, Dr. Malhi examined Montanez at his cell.  (*Id.*).  Montanez alleges that he was unable to walk, and he told Dr. Malhi that he was urinating on

---

[1]    Montanez does not list Sergeant Bullick as a Defendant in this action.  Montanez's scant claims against Sergeant Bullick suffer from the same defects against the named Defendants, as articulated below.  As such, to the extent that Montanez intended to name Sergeant Bullick as a Defendant, he is entitled to dismissal from this action.  *See, e.g.*, *Ryle v. Fuh*, 820 F. App'x 121, 123-24 (3d Cir. 2020) (affirming District Court's granting of defendant's motion to dismiss, and dismissal against some defendants *sua sponte*, where the Court dismissed the complaint with prejudice); *Coulter v. Unknown Prob. Officer*, 562 F. App'x 87, 89 (3d Cir. 2014) (affirming district court's *sua sponte* dismissal of non-moving defendant where the grounds raised by the moving defendants were common to all defendants and the plaintiff had an opportunity to respond to the moving defendants' arguments).

himself, but Dr. Mahli only nodded and walked off.  (*Id.*).  Montanez claims that he remained

in his cell for three (3) days.  (*Id.* at pp. 6-7).

On August 31, 2021, Montanez was transported to an outside hospital, University of

Pittsburgh Medical Center ("UPMC") Altoona.  (*Id.* at p. 7).  While at the hospital, Montanez

underwent an MRI which revealed he had spinal cord stenosis and spinal cord edema.

(*Id.*).  Thereafter, on September 10, 2021, Montanez underwent surgery.  (*Id.*).  On

September 15, 2021, he was transferred to Encompass Health for physical therapy.  (*Id.*).

On October 1, 2021, Montanez was transferred to the infirmary at the State

Correctional Institution, Rockview, Pennsylvania ("SCI-Rockview"), and treated by Dr.

Preston.  (*Id.*).  Montanez alleges that Dr. Preston "denied [him] proper or adequate pain

medication even after falling and causing a herniated disk."  (*Id.*)   He alleges that

Corrections Health Care Administrator Ellers "lied about the results of the X-ray taken after

the fall," which he claims resulted in a delay of treatment.  (*Id.*).

Montanez asserts that he returned to SCI-Huntingdon on November 12, 2021.  (*Id.*).

He alleges that Corrections Health Care Administrator Price "created a policy that I could

not get access to her until a grievance was filed," which allegedly delayed his treatment.

(*Id.*).  Montanez then submitted a sick call slip.  (*Id.*).  Physician's Assistant Nalley

purportedly replied to the sick call slip and denied Montanez's request for a double mattress

and stronger pain medication, lied to him about his treatment, and allowed him to walk

without a cane or crutches.  (*Id.* at pp. 7-8).

On December 14, 2021, Dr. Edwards treated Montanez in the infirmary at SCI-Huntingdon.  (*Id.* at p. 8).  Montanez alleges that Dr. Edwards refused to prescribe stronger pain medication, refused a request for a double mattress, and should have ordered an MRI of his left hip.  (*Id.*).  He then asserts that Superintendent Wakefield "allowed the actions by Dr. Edwards," and "allow[ed] cold air to continue to blow into [his] cell during a snowy winter."  (*Id.*).

Montanez alleges that WellPath "is being sued as a public entity contracting the medical staff" in this case.  (*Id.*).  Lastly, Montanez asserts that the Commonwealth of Pennsylvania "is being sued in accordance with the type of claims in this lawsuit[]."[2]  (*Id.*).

Montanez alleges that Defendants did not render adequate medical care for his back pain in violation of his rights under the Eighth Amendment.  He also brings claims under the Title II of the Americans with Disabilities Act ("ADA") and section 504 of the Rehabilitation Act ("RA") for the alleged denial of his post-surgery physical therapy.  (*Id.* at pp. 11-12).  For relief, Montanez requests a permanent single cell, to be moved to a facility that is closer to

---

[2]   By Order dated February 14, 2023, the Commonwealth of Pennsylvania was dismissed from this action because it is not a "person" subject to suit under § 1983.  (Doc. 32).  In response, Montanez argues that he is suing the Commonwealth of Pennsylvania for violating Title II of the Americans with Disabilities Act and section 504 of the Rehabilitation Act.  (Docs. 37, 38).  Montanez must plead four elements under Title II of the Americans with Disabilities Act against the Commonwealth: "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability."  *Geness v. Cox*, 902 F.3d 344, 361 (3d Cir. 2018).  As set forth herein, the Court finds that Montanez has not satisfied these elements.  Thus, granting Montanez leave to amend his claims against the Commonwealth of Pennsylvania would be futile and cause undue delay.

Philadelphia and that offers physical therapy for his legs, and $5,000,000 as compensation. (*Id.* at p. 13).

Defendants move to dismiss all claims pursuant to Rule 12(b)(6).  The motions are fully briefed and ripe for resolution.[3]

## II.   Legal Standard

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct.  1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'"  *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual

---

[3]   Montanez's briefs in opposition to Defendants' motions to dismiss contains facts that are not expressly set forth in the amended complaint.  The Court may not consider such allegations because a complaint cannot be amended by way of an opposition brief.  *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III.   The Commonwealth Defendants' Rule 12(b) Motion

### A.   Deliberate Indifference to Medical Needs

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197. The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842). Moreover, "[i]f a prisoner is under the care of medical experts…a non-medical prison official will generally be justified in believing that the prisoner is in

7

capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).  Accordingly, "absent a

reason to believe (or actual knowledge) that prison doctors or their assistants are

mistreating (or not treating) a prisoner, a non-medical prison official…will not be chargeable

with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

      The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical

needs were serious.  A serious medical need is "one that has been diagnosed by a

physician as requiring treatment or one that is so obvious that a lay person would easily

recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v.*

*Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Not every condition is a serious medical need;

instead, the serious medical need element contemplates a condition of urgency, namely,

one that may produce death, degeneration, or extreme pain.  *See id.*  Moreover, because

only egregious acts or omissions can violate this standard, mere medical malpractice

cannot result in an Eighth Amendment violation.  *See White v. Napoleon*, 897 F.2d 103,

108-10 (3d Cir. 1990); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("medical

malpractice does not become a constitutional violation merely because the victim is a

prisoner").

      Additionally, prison medical authorities are given considerable latitude in the

diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194

(3d Cir. 2008), and a doctor's disagreement with the professional judgment of another

doctor is not actionable under the Eighth Amendment.  *See White*, 897 F.2d at 108-10.

Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim.  *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *see also Pearson v. Prison Health Servs.*, 850 F.3d 526, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

In the instant case, Defendants do not appear to challenge whether Montanez had a serious medical need.  Rather, they assert that Defendants Patton, Davis, Wakefield, Ellers, and Price are entitled to dismissal because they were not personally involved in the alleged violations of Montanez's constitutional rights.  (Doc. 28, pp. 7-10).  They maintain further that all Commonwealth Defendants are entitled to dismissal because they did not demonstrate deliberate indifference to Montanez's medical needs.  (*Id.* at pp. 10-12).  The Court considers each argument in turn below.

### 1.    Defendants Patton, Davis, Wakefield, Ellers, and Price

Under § 1983, individual liability may be imposed only if the state actor played an "affirmative part" in the alleged misconduct.  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Liability "cannot be predicated solely on the operation of *respondeat superior*."  *Id.*  In other words, defendants "must have personal involvement in the alleged wrongs…shown through

allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1208.  Moreover, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, does not establish the involvement of officials and administrators in any underlying constitutional deprivation.  *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); *Ramos v. Pa. Dep't of Corr.*, No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate-plaintiff's grievance does not state a constitutional claim), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *see also Rode*, 845 F.2d at 1207 (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary

personal involvement); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that

a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal

involvement for purposes of a civil rights action).

  With respect to supervisory liability, there are two theories: "one under which

supervisors can be liable if they established and maintained a policy, practice or custom

which directly caused the constitutional harm, and another under which they can be liable if

they participated in violating plaintiff's rights, directed others to violate them, or, as the

persons in charge, had knowledge of and acquiesced in their subordinates' violations."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010 (quotation and alteration

marks omitted)).  As to the second theory, a plaintiff must show that each defendant

personally participated in the alleged constitutional violation or approved of it.  *See C.N. v.

Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005); *see also Ashcroft v. Iqbal*, 556

U.S. 662, 677 (2009).  With respect to the first, "the plaintiff must establish that: (1) existing

policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor

was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that

risk; and (4) the injury resulted from the policy or practice."  *Merring v. City of Carbondale*,

558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118

(3d Cir. 1989)).

  As an initial matter, the Court notes that Montanez appears to have withdrawn his

claims against Defendants Patton and Davis.  The amended complaint does not identify

Patton and Davis as Defendants and does not contain any factual averments against them. Accordingly, Defendants Patton and Davis will be dismissed from this action.

With respect to Defendant Riviello, the amended complaint lists him as a Defendant, but does not specify what role, if any, Superintendent Riviello played in the alleged denial of Montanez's rights.  Under the most liberal construction, Montanez's amended complaint fails to state a claim for relief against Defendant Riviello.  Based upon the above legal standards, it is clear that any claims against Defendant Riviello are subject to dismissal based on Montanez's failure to set forth any factual allegations against him in the amended complaint.  Without such factual allegations, it is impossible to conclude that Defendant Riviello deprived Montanez of any constitutional rights.  *See Hudson v. City of McKeesport*, 244 F. App'x 519, 522 (3d Cir. 2007) (affirming dismissal of defendant because complaint did not provide any basis for a claim against him).

Montanez alleges that Defendant Wakefield, in his role as Superintendent, "allowed the actions by Dr. Edwards.  Therefore, allowing the policy of medical treatment being denied by medical staff…"  (Doc. 24, p. 8).  As noted above, a plaintiff may establish supervisory liability if he demonstrates that a supervisor established and maintained a policy, practice, or custom that directly caused the constitutional harm.  *Santiago*, 629 F.3d at 129 n.5.  Montanez, however, has not demonstrated that Defendant Wakefield knew of any unreasonable risk and was indifferent to that risk by failing to implement such a policy.  *See Merring*, 558 F. Supp. 2d at 547.  The allegations of the amended complaint amount to

a blanket invocation of vicarious liability.  Moreover, Montanez failed to establish that

Defendant Wakefield personally participated in any alleged constitutional violation or

approved of it.  *See C.N.*, 430 F.3d at 173.

Finally, Montanez seeks to hold Defendants Ellers and Price liable based upon their

responses to his grievances.  As noted above, these Defendants' participation in review of

Montanez's grievances does not establish personal involvement in the alleged constitutional

violations.  *See Pressley*, 266 F. App'x at 218.  For all the foregoing reasons, the Court will

grant the Commonwealth Defendants' motion to dismiss.

### 2.    The Commonwealth Defendants

Montanez next alleges that the Commonwealth Defendants demonstrated deliberate

indifference to his medical needs.  Defendants Price, Ellers, Wakefield, Riviello, and Bullick

are not medical personnel.  *See Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005)

(noting that Health Care Administrators, such as Defendants Price and Ellers, "are

undisputably administrators, not doctors").  The amended complaint confirms that Montanez

was under the care of medical personnel.  Because Defendants Price, Ellers, Wakefield,

Riviello, and Bullick are not physicians, they cannot be considered deliberately indifferent

"simply because they failed to respond directly to the medical complaints of a prisoner who

was already being treated by the prison doctor."  *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d

Cir. 1991); *see also Foreman v. Bureau of Prisons*, No. 06-1274, 2007 WL 108457, at *4-5

(3d Cir. Jan. 16, 2007) (concluding that non-medical personnel were entitled to qualified

immunity regarding inmate's Eighth Amendment claim that he was deprived of a specific

shower chair).  Montanez has not alleged that these Defendants had reason to believe or

actual knowledge that his medical providers were mistreating or failing to treat him.  *See*

*Spruill*, 372 F.3d at 236.

   With respect to Commonwealth Defendant Nurse Wagman, Montanez's inadequate

medical care claim against her is subject to dismissal because it amounts to a mere

disagreement with medical treatment.  Montanez alleges that Wagman took him to the

medical department in a wheelchair immediately after the August 28, 2021 incident.  (Doc.

24, p. 6).  Once in the medical department, Defendant Wagman examined Montanez and

called Dr. Mahli.  (*Id.* at pp. 5-6).  Montanez contends that Dr. Mahli directed Defendant

Wagman to move Montanez to the first tier and that he needed to be taken to the hospital.

(*Id.* at p. 6).  Montanez alleges that Defendant Wagman denied his request to be taken to

the hospital, returned him to the housing unit, and placed him on the lower tier.  (*Id.*).  The

following day, Dr. Mahli treated Montanez, and on August 31, 2021, he was transported to

an outside hospital for further treatment.  (*Id.* at pp. 6-7).  Construing the allegations in the

light most favorable to Montanez, the Court concludes that Montanez has failed to allege an

Eighth Amendment medical care claim against Defendant Wagman.  *See Hope v. Warden*

*York Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (noting that "a failure to eliminate all

risk [does not] establish that the Government [has been] deliberately indifferent to [inmates']

serious medical needs").  The amended complaint demonstrates that Defendant Wagman

had limited interaction with Montanez and immediately provided medical care to him.

Montanez's belief that he should have received different treatment and should have been

transported to an outside hospital constitutes a "mere disagreement as to the proper

medical treatment," and is not an actionable Eighth Amendment claim.  *Monmouth Cnty.*

*Corr. Institutional Inmates*, 834 F.2d at 346.

Accordingly, the Court will grant the Commonwealth Defendants' motion to dismiss

with respect to Montanez's Eighth Amendment claim.

### B.    Claims under the Americans with Disability Act and Rehabilitation Act

Montanez also alleges that Defendants violated Title II of the ADA as well as the

Rehabilitation Act by failing to provide proper medical treatment.  (Doc. 24, pp. 10-11).  Title

II of the ADA, "which prohibits a 'public entity' from discriminating against a 'qualified

individual with a disability' on account of that individual's disability...covers inmates in state

prisons."  *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (quoting 42 U.S.C. §§

12131, 12132).  The Rehabilitation Act provides that "[n]o otherwise qualified individual with

a disability in the United States ... shall, solely by reason of his or her disability, be excluded

from the participation in, be denied the benefits of, or be subjected to discrimination under

any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The

Third Circuit has explained that "[t]he substantive standards for determining liability under

the Rehabilitation Act and the ADA are the same."  *Blunt v. Lower Merion Sch. Dist.*, 767

F.3d 247, 275 (3d Cir. 2014) (quoting *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 282-83 (3d

Cir. 2012)).  Therefore, to maintain a claim under either the ADA or the Rehabilitation Act,

Montanez must demonstrate "that he is a qualified individual with a disability, who was

precluded from participating in a program, service, or activity, or otherwise was subject to

discrimination, by reason of his disability."  *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289

(3d Cir. 2019).

      While the Third Circuit has not addressed the issue precedentially, most courts "have

held that Title II does not authorize suits against government officers in their individual

capacities."  *Williams v. Hayman*, 657 F. Supp. 2d 488. 502 (D.N.J. 2008); *see also Bowens*

*v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (noting that "the District Court could have

properly followed the holdings of those circuits which have concluded that there is no

individual damages liability under Title II of the ADA, which provides an additional basis to

affirm the dismissal of this claim"); *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 169-70

(3d Cir. 2015) (agreeing with the Second and Eighth Circuits that "Title II of the ADA does

not provide for suits against state officers in their individual capacities").  Likewise,

individuals who are employees of entities who receive federal funds are not subject to

individual liability under the Rehabilitation Act.  *See Olschefski v. Red Lion Area Sch. Dist.*,

No. 1:12-cv-871, 2012 WL 6003620, at *8 (M.D. Pa. Nov. 30, 2012).  Montanez, therefore,

cannot maintain his ADA and Rehabilitation Act claims against the individual Defendants in

their individual capacities.

The Court must next consider Montanez's claims against the individual Defendants in their official capacities. The official capacity claims for damages against the Commonwealth Defendants are treated as claims against the Department of Corrections ("DOC") because the real party in interest is the DOC. *See Rogers v. NJDOC*, No. 15-7005, 2021 WL 1050233, at *15 (D.N.J. Mar. 19, 2021).

Montanez seeks $5,000,000 as compensation. Punitive damages, however, are not available under Title II of the ADA and section 504 of the Rehabilitation Act. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 429 (3d Cir. 2003) (citing *Barnes v. Gorman*, 536 U.S. 181, 187 (2002)). To receive compensatory damages, Montanez must demonstrate "intentional discrimination under a deliberate indifference standard." *Furgess*, 933 F.3d at 288-89. The "definition of deliberate indifference in the…ADA context is consistent with [the] standard of deliberate indifference in the context of § 1983 suits by prison inmates." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013). Thus, to show deliberate indifference, Montanez must show that the DOC "(1) had 'knowledge that a federal protected right is substantially likely to be violated,' and (2) failed 'to act despite that knowledge.'" *Snider v. Pa. DOC*, 500 F. Supp. 3d 360, 2020 WL 7229817, at *19 (M.D. Pa. Dec. 8, 2020) (quoting *Geness v. Admin. Office of Pa. Courts*, 974 F.3d 263, 274 (3d Cir. 2020)). Montanez can show such a right was "substantially likely to be violated" by either "(1) alleging 'a failure to adequately respond to a pattern of past occurrences of injuries like [his]"; or (2) alleging facts that 'prove that the risk of…cognizable

17

harm was so great and so obvious that the risk and the failure…to respond will alone support finding deliberate indifference." *Matthews v. Pa. Dep't of Corr.*, 827 F. App'x 184, 187 (3d Cir. 2020) (quoting *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018)).

As an initial matter, Montanez does not assert that he was excluded from participating in any programs, services, or activities.  To the extent Montanez claims that his rights under the ADA and Rehabilitation Act were violated because he was denied medical treatment for his disabilities, such a claim "is not encompassed by the ADA's prohibitions." *Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006); *see also Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996) (concluding that the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners [because the] ADA does not create a remedy for medical malpractice").

As stated *supra*, in analyzing Montanez's Eighth Amendment claims, the Court concluded that Montanez had not met a similar deliberate indifference standard. Specifically, the Court noted that the Commonwealth Defendants, who are not medical personnel, were justified in relying on the expertise and care provided to Montanez by his medical providers.  The Court concluded further that Montanez had not demonstrated that the Commonwealth Defendants had reason to believe or actual knowledge that his medical providers were mistreating or failing to treat him.  Likewise, as the Court has concluded *supra*, Defendant Wagman did not demonstrate deliberate indifference to Montanez's medical needs.  Thus, given the Court's previous conclusion, and because the "definition of

18

deliberate indifference in the RA and the ADA context is consistent with [the] standard of

deliberate indifference in the context of § 1983 suits by prison inmates," the Court reaches

the same conclusion here. *Matthews*, 827 F. App'x at 188. The Court, therefore, will grant

the Commonwealth Defendants' motion to dismiss with respect to Montanez's official

capacity claims for compensatory damages pursuant to the ADA and the Rehabilitation Act.

IV. **The Medical Defendants' Motion**

    A. **Deliberate Indifference to Medical Needs**

    Montanez's amended complaint asserts a claim under § 1983, alleging violations of

the Eighth Amendment's Cruel and Unusual Punishments Clause based upon allegations

that he received inadequate medical care. (Doc. 24).

    In the context of prison medical care, the Eighth Amendment "requires prison

officials to provide basic medical treatment to those whom it has incarcerated." *Rouse*, 182

F.3d at 197). Prison officials violate the Eighth Amendment "when they are deliberately

indifferent to an inmate's serious medical need." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d

Cir. 2020) (citing *Estelle*, 429 U.S. at 106). "[T]he concept of a serious medical need, as

developed in *Estelle*, has two components, one relating to the consequences of a failure to

treat and one relating to the obviousness of those consequences." *Colburn v. Upper Darby

Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). The "condition must be such that a failure to

treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]"

and "the condition must be one that has been diagnosed by a physician as requiring

treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]" *Farmer*, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has found deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197 (citation omitted).

The Court concludes that, even if it were assumed that the amended complaint has alleged a serious medical need concerning Montanez's issues, the Court would still find that the amended complaint has not plausibly alleged that the Medical Defendants were deliberately indifferent to that need.

Montanez alleges that Dr. Mahli examined him the day after the incident and failed to respond to his complaints that he was urinating on himself. (Doc. 24, pp. 6-7). He alleges that Dr. Preston "denied [him] proper or adequate pain medication." (*Id*. at p. 7). Montanez alleges that Physician's Assistant Nalley refused to order a double mattress, which he believed he would help his back pain, denied him stronger pain medication, "lied to him" about being referred back to physical therapy, and allowed him to walk around without a cane or crutches. (*Id.* at pp. 7-8). He similarly alleges that Dr. Edwards failed to provide

stronger pain medication, failed to order a double mattress, and failed to order an MRI of his left hip.  (*Id.*).

Based on the allegations of the amended complaint, the Medical Defendants did not exhibit a wanton disregard of Montanez's medical needs, did not fail to provide any medical treatment, and did not deny any requests for medication.[4]  Montanez simply disagrees with the Medical Defendants' medical judgment and prescription of certain medication.  Such disagreement does not give rise to a constitutional claim given the considerable latitude afforded prison authorities in the treatment of prisoners.  *See Spruill*, 372 F.3d at 235 (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation); *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) (doctor's choice of one drug over another is not actionable); *Gause v. Diguglielmo*, 339 F. App'x 132 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation).  Rather, where there has been medical care, "we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."  *Pearson*, 850 F.3d at 535.

Additionally, as case law indicates, a delay in a surgical procedure does not automatically rise to the threshold of deliberate indifference.  In *Davis v. First Corr. Medical*, 589 F.Supp.2d 464 (3d Cir. 2008), where the plaintiff alleged that a delay in treatment constituted deliberate indifference, the Court held that while there may have been a delay in

---

[4]   Montanez does not allege that he failed to receive any medication.  (*See* Doc. 24).

surgery due to diagnostic testing and scheduling, such a delay does not constitute deliberate indifference to the inmate's medical condition without a more serious allegation that the delay was due to non-medical reasons.  Similarly, in the case at bar, while Montanez may aver that his surgery was delayed for approximately ten days, he fails to plead that the delay was "deliberate" or for "non-medical reasons."  *See Durmer*, 991 F.2d at 68-69.  Montanez's disagreement with the course of treatment is, as stated *supra*, an improper basis for a deliberate indifference claim.

In sum, Montanez fails to allege facts from which it can reasonably be inferred that the Medical Defendants exhibited a deliberate indifference to his medical needs.  Therefore, the Court will dismiss Montanez's Eighth Amendment claims against the Medical Defendants for failure to state a claim upon which relief can be granted.

### B.    Claims against WellPath

Montanez also names as a Defendant, WellPath, a private company that contracts with correctional institutions to provide medical care to inmates.  A private corporation such as WellPath, which is under contract to provide prison health services, may be liable under § 1983 only if that entity's policies or customs caused the alleged constitutional violation. *See Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Natale*, 318 F.3d at 583-84.  For such a claim to be plausible, the plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was."  *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

22

A plaintiff may also state a plausible basis for liability against an entity like WellPath by "alleging failure-to-supervise, train, or discipline… [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations."  *Ponzini v. PrimeCare Med.*, Inc., 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe Cnty.*, 789 F. App'x 313 (3d Cir. 2019).  Only in the narrowest of circumstances can a failure to train or supervise "said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations."  *Id.* (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (internal citation and quotation marks omitted)).  In the amended complaint, Montanez broadly alleges that WellPath is a "medical contractor" and "a public entity contracting the medical staff." (Doc. 24, pp. 3, 8).  Montanez does not tie any of the claimed violations of his constitutional rights to a WellPath policy or custom or to WellPath's failure to train, supervise, or discipline its staff.  Accordingly, the amended complaint does not state a claim against WellPath and the official capacity claims against Wellpath will be dismissed.

**C.   Claims under the Americans with Disability Act and Rehabilitation Act**

The Medical Defendants next argue that Montanez's ADA and Rehabilitation Act claims concerning their alleged failure to provide proper medical care is not cognizable against them because they are not proper defendants for a private cause of action under Title II of the ADA of the Rehabilitation Act. (Doc. 30, pp. 18-21). As such, the Medical Defendants contend that they should be dismissed from this action. (*Id.*)

As stated, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, in order "[t]o successfully state a claim under Title II of the ADA, a person 'must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'" *Haberle*, 885 F.3d at 178-79 (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)).

Particularly relevant here is the third element—whether Montanez has alleged that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity. Montanez wholly fails to allege that he was denied or excluded from any services, programs, or activities. Additionally, Title II of the ADA defines "public entity" as follows: "(A) any State or

local government; (B) any department, agency, special purpose district, or other

instrumentality of a State or States or local government; and (C) the National Railroad

Passenger Corporation, and any commuter authority[.]" 42 U.S.C. § 12131(1).

     While a state prison falls within the statutory definition of a "public entity" as

understood by Title II of the ADA, *see Yeskey*, 524 U.S. at 210, a private corporation

contracting with that prison does not.  *See Matthews*, 613 F. App'x at 170 (concluding, that

for purposes of the ADA, "a private corporation is not a public entity merely because it

contracts with a public entity to provide some service" (citation and internal quotation marks

omitted)).

     Additionally, an individual defendant, who is sued in his or her individual capacity, is

not a "public entity" under Title II of the ADA.  *See Bowens*, 674 F. App'x at 136 (affirming

district court's dismissal of plaintiff's claim brought under Title II of the ADA, where plaintiff's

amended complaint "sued state employees in their individual capacities" and "not any

'public entity' as the statute requires" (quoting 42 U.S.C. § 12132); *Matthews*, 613 F. App'x

at 170 (finding that "Title II of the ADA does not provide for suits against state officers in

their individual capacities").

     Applying these principles here, the Court finds that Montanez's ADA and

Rehabilitation Act claims against the Medical Defendants fail to state a claim upon which

relief can be granted.  The individual Medical Defendants—i.e., Defendants Preston, Mahli,

Edwards, and Nalley—do not constitute public entities within the meaning of Title II of the ADA and, thus, are not subject to suit.

In addition, WellPath, the private corporation providing medical services to inmates, also does not constitute a public entity, even if WellPath contracts with the prison to provide such services. *See generally City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 610 (2015) (explaining that "[o]nly public entities are subject to Title II" of the ADA). Accordingly, for all of these reasons, the Court will grant the Medical Defendants' motion to dismiss to the extent that they argue that Montanez's amended complaint fails to state an ADA or Rehabilitation Act claim upon which relief can be granted.

## V.   Leave to Amend

When a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). The Court finds that granting further leave to amend would be futile based on the factual and legal defects identified in Montanez's amended complaint. *See Jones v. Unknown D.O.C. Bus Driver &*

*Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story . . . giving him further leave to amend would be futile.").

## VI.   Conclusion

Based on the foregoing, the Court will grant Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docs. 27, 29).

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: August 23, 2023